# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LEAH D. THOMPSON**                                                                                          **PLAINTIFF**

**V.**                                   **No. 4:21-cv-00493-BRW-ERE**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]                          **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Billy Roy Wilson. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Wilson can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.    Introduction:**

On July 25, 2018, Leah D. Thompson filed a Title II application for disability and disability insurance benefits. *Tr. at 10*. On the same day, she filed a Title XVI

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

application for supplemental security income. *Id*. In both applications, Ms. Thompson alleged disability beginning on February 26, 2017. *Id*. In a September 1, 2020 written decision, an administrative law judge (ALJ) denied both applications. *Tr. at 18*. The Appeals Council denied Ms. Thompson's request for review on April 6, 2021. *Tr. at 1-3*. The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Thompson has requested judicial review.

For the reasons stated below, the Court should affirm the Commissioner's decision.

## II.  The Commissioner's Decision:

At step one of the required five-step analysis, the ALJ found that Ms. Thompson, who was 51 years old at the time of the hearing (*Tr. at 25*), had not engaged in substantial gainful activity since the alleged onset of February 26, 2017.[2] *Tr. at 13*. At step two, the ALJ determined that Ms. Thompson has the following severe impairments: depressive disorder; post-traumatic stress disorder (PTSD); anxiety disorder; and unspecified schizophrenia disorder. *Id*.

---

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

After finding that Ms. Thompson's impairments did not meet or equal a listed impairment (*Tr. at 13-14*), the ALJ determined that she had the residual functional capacity (RFC) to perform the full range of work at all exertional levels, with these limitations: (1) no more than occasional contact with the public, and the remaining interpersonal contact can only be incidental to the work performed (meaning very little amount of meet and greet); (2) Ms. Thompson can understand, follow, and retain simple instructions and perform simple tasks that required little independent judgment to perform those tasks; and (3) only occasional changes in a routine work setting. *Tr. at 14-15*.

At step four, the ALJ found that, based on Ms. Thompson's RFC, she was unable to perform any of her past relevant work. *Tr. at 16*. Finally, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Thompson's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as general worker (lithographic) and cleaner II. *Tr. at 17*. Therefore, the ALJ found that Ms. Thompson was not disabled. *Tr. at 17-18*.

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Thompson's Arguments on Appeal

Ms. Thompson contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the RFC did not incorporate all of her limitations; (2) the ALJ did not properly develop the record; (3) the ALJ did not

properly evaluate the medical opinions; (4) the ALJ did not properly evaluate her subjective complaints; and (5) the ALJ did not resolve an apparent conflict between the *Dictionary of Occupational Titles* (DOT) and the VE's testimony at step five. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

    **C.**    **Medical Summary**

At issue in this case are Ms. Thompson's mental impairments. She does not argue disability based on any physical impairment.

Ms. Thompson admitted that she did not require inpatient hospitalization for her diagnosed impairments of anxiety, depression, PTSD, or schizophrenia. *Tr. at 279*. Medication for mental health problems were prescribed mainly by her primary care physician (PCP) rather than a psychiatrist. *Tr. at 299-301*. She told her PCP in September 2018 that she was doing better with medication but still hadn't been to counseling. *Tr. at 272-273*. Her PCP recommended psychiatric care but she did not begin counseling until 2019. *Tr. at 272-277*.

At a mental diagnostic examination in March 2019, Ms. Thompson had appropriate affect and was pleasant and cooperative. *Tr. at 277-282*. She said she had a good appetite and got about eight hours or sleep per night. *Id*. She had no pressured speech, delusions, or thought disorder, according to Don Ott, the licensed psychologist who examined her. *Id*. He noted that Ms. Thompson lived alone and

performed household chores. *Id*. Dr. Ott concluded that she may have difficulty staying focused, but that she would have an adequate capacity to cope with the mental demands of work. *Tr. at 285*.

While Ms. Thompson sometimes presented as tearful to her therapist in 2019, she also said, in December 2019 that a change in medication prescribed by her PCP had led to improved mood and less anxiety.[3] *Tr. at 297*. She told her therapist in January 2020 that she was content to seek all medications through her PCP. *Tr. at 301*. She told her therapist in March 2020 that she had a positive response to a change in medication and that she had a decrease in hallucinations. *Tr. at 305-306*. She endorsed an improvement in mood and was mildly more energetic. *Id*. She had begun exercising, although at the hearing she said she sat at home and stared at the walls all day. *Tr. at 35-37, 327-328*. In April 2020, she said that things were "going great." *Tr. at 323*.

Ms. Thompson said at the hearing that on a number of occasions she saw David Price, M.D., who she claims was a psychiatrist at the same clinic as her therapist. While Dr. Price filled out a medical source statement in 2020, his name is not on any clinic notes, so it is not clear that Ms. Thompson ever saw Dr. Price in person.

---

[3] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

The two disability determination services psychiatric experts reviewed the records and found that Ms. Thompson's mental impairments were non-severe. *Tr. at 16.*

### D.   Analysis of Appeal Arguments

#### 1.   RFC

Ms. Thompson asserts that the RFC, which included mental functional restrictions, did not incorporate her limitations. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [her] impairments. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

The RFC accounted for mental health issues, by limiting Ms. Thompson in the areas of interpersonal contact and changes in the work setting. *Tr. at 14-15*. The ALJ also limited her to tasks involving simple instructions and little independent

judgment. *Id*. The ALJ clearly gave weight to Ms. Thompson's limitations because the RFC was more restrictive than the assessments of Dr. Ott or the DDS experts.

Moreover, Ms. Thompson did not begin regular psychiatric care until two years into the relevant time-period and she said that medication was moderately effective, once the proper adjustments were made. The RFC fully incorporated the credible mental health limitations.

### 2. Development of the record

Ms. Thompson alleges that the ALJ failed to properly develop the record. An ALJ has a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability. The ALJ does not have to advocate for the claimant and the ALJ's duty to develop is not never-ending. *Id*.; *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Ms. Thompson's argument is meritless. She states that there are only 95 pages of "F" exhibits ("F" is the section of the transcript for evidence of medical

treatment). *Doc. No. 9 at 6*. However, it is the claimant's duty to present evidence of disability. If the evidence offered by the claimant is sparse, it is not the ALJ's fault. The ALJ need not engage in a fishing expedition to obtain evidence. Moreover, at the hearing, Ms. Thompson's attorney stated that she was still waiting on Ms. Thompson's counselor to provide a medical source statement, but she never supplemented the record with this statement. She also admitted that there were no records signed by an actual psychiatrist, and did not obtain any such records. *Tr. at 27*.

There was no conflict in the record that warranted further development. Over the course of therapy sessions, Ms. Thompson had generally normal mood an affect and responded well to properly adjusted medications. The mental diagnostic examiner did not assess significant mental restrictions, and Ms. Thompson could perform daily activities. She has not shown that the ALJ erred with respect to record development.

### 3. Consideration of Dr. Price's statement

Ms. Thompson next argues that the ALJ was wrong in finding that Dr. Price's statement was unpersuasive. This argument also is without merit.

On January 28, 2017, the Administration promulgated new regulations that govern an ALJ's assessment medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with

the evidence; (3) relationship with the claimant;[4] (4) provider specialization; and (5) any other important factor. *See* 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Phillips v. Saul*, No. 1:19-cv-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

Dr. Price indicated, on the short checkbox form,[5] that Ms. Thompson would have some problems completing a normal workday due to her mental health conditions. *Tr. at 344-345*. The ALJ found this opinion unpersuasive in light of the balance of the medical record, which showed improvement with treatment and satisfaction with current course of treatment, as well as clinic notes showing that Mr. Thompson's memory, mood, and affect remained intact. *Tr. at 16*. The record indeed reflected those points. The ALJ properly characterized Dr. Price's opinion.

### 4.     Evaluation of Ms. Thompson's Subjective Complaints

Next, Mr. Thompson contends that the ALJ erred in finding that Ms. Thompson's subjective complaints were inconsistent with the record as a whole. *Tr. at 15*. "When evaluating a claimant's subjective complaints of pain, the ALJ must

---

[4] This includes: (1) length of treatment relationship; (2) frequency of examinations; (3) purpose of the treatment relationship; (4) extent of the treatment relationship; and (5) examining relationship.
[5] A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). The Court again notes that Dr. Price's name is not on any treatment notes, so his treating relationship with Ms. Thompson has not been verified.

consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

Ms. Thompson stated at the hearing that she just stayed in her room and stared at the walls all day, and that she could not handle being around people. *Tr. at 35-37*. But on her function report she said she could prepare light meals and do laundry, as well as drive and shop in stores.[6] *Tr. at 45, 209-215*. She told her provider that she had started exercising, and that she had been to the library. *Tr. at 303, 327-328*. These attestations call into question her hearing testimony that she was in a "vegetative state." *Tr. at 36*. The ALJ also noted in his decision that Ms. Thompson improved with the right regimen of medications and that her treatment was going well. The ALJ properly considered and discussed Ms. Thompson's subjective complaints.

---

[6] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

### 5. Possible Conflict at Step Five

Ms. Thompson's last argument is that the ALJ did not resolve a possible conflict between the DOT and the VE's testimony. She states that because the jobs that the VE identified require a reasoning level of two, she could not perform them. Reasoning level two entails "apply[ing] common sense understanding, to carry out detailed but uninvolved written or oral instructions" and "deal[ing] with problems involving few concrete variables in or from standardized situations." *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018).

The Eighth Circuit has held that a limitation to simple work in the RFC, like we have in this case, is not incompatible with level two reasoning jobs. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). The court focused on the term "uninvolved" in the definition of level two reasoning, finding that level two reasoning jobs may be detailed, but "not complicated or intricate." *Id*. It also noted that the level two reasoning definition "is an upper limit across all jobs in the occupational category, not a requirement of every job within the category." *Id*. Accordingly, in this case, there was no unresolved conflict at step five.[7]

---

[7] Ms. Thompson makes vague arguments at the end of her brief that she could not perform the jobs identified by the VE simply because she had diagnoses of mental illness and was on psychotropic medications for those illnesses. A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). The RFC incorporated Ms. Thompson's credible limitations and the VE identified jobs that fit with the RFC. Ms. Thompson has not shown error by the ALJ.

**VI.     Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Thompson was not disabled. The RFC incorporated all of Ms. Thompson's credible limitations, the record was fully developed, the ALJ properly analyzed the medical opinions and Ms. Thompson's subjective complaints, and the ALJ did not err at step five.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be affirmed, judgment be entered for Defendant, and this case be closed.

DATED this 18th day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE